DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellants, Lena Bryant ("Mother") and Joshua A. ("Father"), separately appeal from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated their parental rights to their minor daughter, B.A., and placed the child in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.
 I. {¶ 2} Mother and Father are the natural parents of B.A., born March 7, 2002. Mother also has an older son who lives with his father and is not at issue in *Page 2 
this appeal. Mother and Father were never married and apparently did not live together after B.A. was born. On January 29, 2006, B.A. was removed from Father's home pursuant to Juv.R. 6 after the police found a methamphetamine lab in the home. B.A. had lived with Father for most of her life due to Mother's longstanding substance abuse problem. At the time of B.A.'s removal from the home, however, B.A. was living with Father's live-in girlfriend because Father was serving a one-year term of incarceration for a drug-related conviction.
 {¶ 3} On March 15, 2006, the trial court adjudicated B.A. an abused, dependent, and neglected child and later placed her in the temporary custody of CSB. At the time of the adjudication and disposition, Father remained incarcerated and Mother had not started working on the requirements of her case plan.
 {¶ 4} On November 1, 2006, CSB moved for permanent custody of B.A. Mother had also moved for legal custody of B.A. or alternatively for a six-month extension of temporary custody. Following a hearing on the motions, the trial court found that B.A. could not be placed with either parent within a reasonable time or should not be placed with them and that permanent custody was in her best interest. Consequently, the trial court terminated parental rights and placed B.A. in the permanent custody of CSB. Mother and Father separately appeal, each raising two assignments of error. Their assignments of error are similar and will be consolidated for ease of review. *Page 3 
 II. MOTHER'S ASSIGNMENT OF ERROR I "THE TRIAL COURT'S DECISION TERMINATING APPELLANT-MOTHER'S PARENTAL RIGHTS WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]"
 FATHER'S ASSIGNMENT OF ERROR I "THE VERDICT GRANTING PERMANENT CUSTODY OF [FATHER'S] CHILD TO [CSB] WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE; THE EVIDENCE IS NOT LEGALLY SUFFICIENT TO SUPPORT THE VERDICT."
 {¶ 5} Mother and Father contend that the trial court's decision to place B.A. in the permanent custody of CSB was not supported by the evidence presented at the hearing. Before a juvenile court can terminate parental rights and award to a proper moving agency permanent custody of a child, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of the prior 22 months, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B)(1) and2151.414(B)(2); see, also, In re William S. (1996), 75 Ohio St.3d 95,99. Mother and Father raise challenges to the trial court's findings on both prongs of the permanent custody test. *Page 4 
 {¶ 6} The trial court found that the first prong of the test was satisfied because B.A. could not be placed with either parent within a reasonable time or should not be placed with either parent. See R.C.2151.414(E). The trial court supported this finding with three factors under R.C. 2151.414(E), including that each parent had failed to substantially remedy the conditions that caused the removal of B.A. and prevented her return to the home. See R.C. 2151.414(E)(1).
 {¶ 7} There was ample evidence to support the trial court's finding that Mother had failed to remedy the problems that prevented her from parenting B.A. At the time B.A. was removed from the home, she was living in Father's home because Mother had a long-standing problem with substance abuse. When B.A. was born, both B.A. and Mother tested positive for methamphetamines. Mother was later convicted of drug charges and sentenced to a term of incarceration. As a result, B.A. had been living with Father for most of her life.
 {¶ 8} The CSB caseworker explained that B.A. could not be placed with Mother, and Mother could not have unsupervised visits with B.A., until Mother demonstrated an extended period of sobriety. The case plan required Mother to have a substance abuse assessment, follow the recommended course of treatment, and submit weekly urine samples for drug screening.
 {¶ 9} At the time of the permanent custody hearing, more than one year after B.A. had been removed from the home, Mother had not complied with any of the case plan requirements. She had not obtained a substance abuse assessment, *Page 5 
had not participated in a treatment program, and had failed to submit weekly urine samples for drug screening. During the one year prior to the permanent custody hearing, Mother submitted a total of five urine samples. Mother testified at the permanent custody hearing that she had been sober for several months and had not previously understood the significance of these case plan requirements. The caseworker testified, however, that she had repeatedly explained to Mother how important it was for her to demonstrate her sobriety through weekly drug screening and by completing a treatment program.
 {¶ 10} Moreover, there was affirmative evidence before the trial court that Mother had not remained sober during the case planning period. CSB presented evidence that Mother came to two of the scheduled visits and appeared to be under the influence of drugs or alcohol, and that CSB had cancelled those visits for that reason. CSB employees testified about observing Mother's slurred speech and erratic behavior on those two occasions. Mother explained on each occasion that she had just had surgery and was taking prescribed medication, but she offered no corroborating evidence to CSB or to the court that she had undergone surgery or that she was taking prescribed medication.
 {¶ 11} Mother also failed to remedy any of CSB's other concerns that prevented her from receiving custody of B.A. She did not obtain stable employment or stable housing and she continued to have problems with criminal involvement, as she was charged with several criminal offenses during the case *Page 6 
plan period. The caseworker testified at the hearing that Mother was actually in a worse position to parent B.A. at the time of the hearing than she had been when the case began a year earlier.
 {¶ 12} The trial court also had substantial evidence before it to support its finding that Father had failed to remedy the conditions that led to B.A.'s removal from the home. Father had a lengthy history of illegal drug involvement, resulting in numerous criminal convictions over a period of years. This case began, and B.A. was removed from the home, when materials for manufacturing methamphetamines were discovered in Father's home. Although Father was incarcerated and not present in the home at that time, he had left B.A. in the care of those who were in the home, and his absence was due to his own illegal drug involvement.
 {¶ 13} The case plan goals for Father focused on ending his criminal involvement with drugs. When B.A. was removed from his home, Father was incarcerated due to his illegal drug activities and he remained incarcerated for much of the case plan period. Father was released from prison and, within a little over one month, he was again facing new drug manufacturing charges.
 {¶ 14} Father contends that CSB and the trial court should not have focused on his pending drug charges, but should have presumed him innocent until he had been proven guilty. Father had told the caseworker that he had not been personally involved in manufacturing drugs, but he admitted that he had been *Page 7 
living in a home where drug manufacturing activities were occurring. Moreover, the guardian ad litem explained that even if Father could avoid a criminal conviction on the new charges, Father clearly had violated the conditions of his post-release control from his previous drug conviction. The post-release control violation would likely lead to a period of incarceration. Father also had demonstrated a lack of progress toward reunification with B.A. because he was continuing to associate with people involved in drug manufacturing activity.
 {¶ 15} There was ample evidence before the trial court to support its conclusion that both Mother and Father had failed to substantially remedy the conditions that led to the removal of B.A. and prevented her return to either of their homes. Given this finding, the trial court was required by R.C. 2151.414(E) to conclude that B.A. could not be placed with either parent within a reasonable time or should not be placed with them.
 {¶ 16} The trial court also found that permanent custody was in the best interest of B.A. When determining whether a grant of permanent custody is in the child's best interest, the juvenile court must consider the following factors:
 "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; *Page 8 
 "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999; [and]
 "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]" R.C. 2151.414(D)(1)-(4).[1]
 {¶ 17} The interaction and interrelationship between B.A. and her parents was limited to supervised visits at the visitation center. Although Mother attended visits regularly and the visits usually went well, as explained above, CSB had cancelled two of the visits because Mother appeared to be under the influence of drugs or alcohol when she arrived. As the caseworker explained, because CSB continued to be concerned that Mother had a substance abuse problem, the visits between Mother and B.A. never progressed beyond supervised visits at the CSB visitation center.
 {¶ 18} Father was incarcerated during most of the case planning period due to the prior drug conviction. After his release from prison, Father began supervised visitation with B.A. and the visits went well. Witnesses testified that there was a bond between Father and B.A. and CSB had hoped to reunify B.A. with Father. Shortly before the permanent custody hearing, however, Father was arrested on new criminal charges involving the production of methamphetamines
The factor set forth in R.C. 2151.414(D)(5) is not relevant in this case. *Page 9 
in his home. Father was likely facing prison time even if he was not convicted of the new charges because he had violated the terms of his post-release control.
 {¶ 19} The guardian ad litem spoke on behalf of B.A., who was less than five years old at the time of the permanent custody hearing. The guardian explained that he did not ask B.A. where she wanted to live because he did not believe that the child was old enough to express her wishes. The guardian recommended permanent custody. The guardian ad litem emphasized that Mother had done almost nothing to work toward reunification and that, although Mother had indicated that she finally appreciated the significance of this case a few months before the hearing, she still had done nothing. Although the guardian ad litem had initially hoped that B.A. could be reunited with Father, Father was facing additional criminal charges for drug manufacturing at the time of the hearing, which would likely lead to incarceration.
 {¶ 20} The custodial history of B.A. is not entirely clear from the record. As the CSB caseworker testified, each parent had given CSB different accounts of where B.A. had resided. The parents lived in separate homes, yet each had claimed to be the primary caregiver to B.A. The evidence tended to establish that Father had custody of B.A. longer than Mother and that he was the stronger parent figure to her. When B.A. was less than one year old, Mother was arrested for having a methamphetamine lab in the home, B.A. went to live with Father, and Mother was convicted and incarcerated. *Page 10 
 {¶ 21} Each parent had been incarcerated at different points during B.A.'s short life, so it appears that B.A. had no stability until coming into CSB custody. While in CSB custody, B.A. had been living in foster care, was doing well there, and the foster parents were interested in adopting her. During this time, Father and Mother were continually facing new criminal charges, primarily due to their continued involvement with illegal drugs.
 {¶ 22} B.A. was in need of a legally secure permanent placement and neither parent was in a position to provide a suitable home for her. There was also evidence that CSB had pursued several potential relative placements, but there were no relatives available to provide a suitable long-term home for B.A. Consequently, the trial court reasonably concluded that a legally secure permanent placement could only be achieved through a grant of permanent custody to CSB.
 {¶ 23} The trial court had ample evidence before it from which it could conclude that B.A. could not be placed with either parent within a reasonable time or should not be placed with them and that permanent custody to CSB was in her best interest. The first assignments of error of Mother and Father are overruled.
 MOTHER'S ASSIGNMENT OF ERROR II "THE TRIAL COURT ERRED BY NOT GRANTING APPELLANT-MOTHER'S MOTION FOR LEGAL CUSTODY AND/OR IN THE ALTERNATIVE MOTION FOR FIRST SIX MONTH EXTENSION WHERE APPELLANT-MOTHER MADE PROGRESS ON HER CASE PLAN AND CSB FAILED TO USE REASONABLE EFFORTS TO REUNITE [THE FAMILY.]" *Page 11 
 FATHER'S ASSIGNMENT OF ERROR II "THE COURT ERRED IN FAILING TO GRANT THE MOTION FOR A SIX MONTH EXTENSION OF TEMPORARY CUSTODY."
 {¶ 24} Mother contends that the trial court erred by failing to place B.A. in her legal custody or, alternatively, to grant a six-month extension of temporary custody so that she could continue to work on the goals of the case plan. Father likewise contends that the trial court erred in failing to grant a six-month extension of temporary custody.
 {¶ 25} The trial court's decision to grant or deny an extension of temporary custody in this case was a discretionary one. See R.C.2151.415(D)(1) and (2). However, R.C. 2151.415(D)(1) authorizes the trial court to extend temporary custody for six months only if it finds, by clear and convincing evidence, that such an extension is in the best interest of the child and that "there has been significant progress on the case plan of the child, and there is reasonable cause to believe that the child will be reunified with one of the parents or otherwise permanently placed within the period of extension." The trial court did not find that there had been significant progress on the case plan and, in fact, found the opposite to be true.
 {¶ 26} Mother and Father have failed to demonstrate an abuse of discretion by the trial court. As detailed above, the evidence before the trial court demonstrated that Mother and Father had not made significant progress on the *Page 12 
requirements of the case plan and there was no reason to believe that B.A. could be reunited with either one of them within the next six months.
 {¶ 27} The trial court also had the discretion to grant legal custody to Mother if it determined that such a disposition was in the best interest of B.A. See In re N.P., 9th Dist. No. 21707, 2004-Ohio-110. As this Court explained in its review of the parties' first assignments of error, neither parent was in a position to take custody of B.A. at the time of the hearing or in the foreseeable future. The trial court properly found that permanent custody to CSB, not legal custody to Mother or a six-month extension of temporary custody, was in the best interest of B.A. Mother's and Father's second assignments of error are overruled.
 III. {¶ 28} The assignments of error are overruled and the judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27. *Page 13 
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellants.
SLABY, P. J. BAIRD, J., CONCUR
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.)
[1] The factor set forth in R.C. 2151.414(D)(5) is not relevant in this case. *Page 1